UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:19-CR-5 |
| | ) | |
| vs. | ) | |
| | ) | |
| HAROLD VERNON SMITH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

Defendant, Harold Vernon Smith, filed a Motion to Suppress evidence obtained from a suitcase belonging to him that was found on the same tract of property where Defendant was arrested. [Doc. 62]. Specifically, it is ammunition and incriminating evidence found on cellular telephones located within the suitcase that he seeks to exclude. The United States responded in opposition [Doc. 64]. This matter is before the Court pursuant to 28 U.S.C. 636(b) and the standing orders of the District Court for a Report and Recommendation.

On August 31, 2020, the Court conducted an evidentiary hearing on Defendant's motion. Present at the hearing were Defendant and his counsel, George N. Wallace, Esq. and Kaycee M. Roberts, Esq., and Assistant United States Attorneys B. Todd Martin, Esq. and Emily M. Swecker, Esq. Testifying at the hearing were Jessica Melton of the State of Tennessee Office of Probation and Parole, Officer Aaron Spears of the Greene County Sheriff's Department, and Greene County Sheriff Wesley Holt. The United States provided closing arguments at the hearing in this matter and Defendant submitted his argument via a post-hearing Brief. [Doc. 76]. The matter is now ripe for resolution. For the reasons stated herein, the undersigned RECOMMENDS the Motion to Suppress [Doc. 62] be **DENIED**.

I. PROCEDURAL BACKGROUND

On January 8, 2019, the Grand Jury returned a two-count indictment charging Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(c), and of ammunition in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e). Defendant's Motion to Suppress alleges that law enforcement officers violated his Fourth Amendment rights by searching his luggage without first obtaining a search warrant. [Doc. 62, p. 1]. Defendant further avers that items obtained from the search of the luggage must be excluded as a result of this violation of constitutional rights. [Doc. 62, p. 3].

In response, the United States contends that Defendant lacks standing to raise a Fourth Amendment violation relating to the search of the luggage. [Doc. 64, pp. 6-7]. The United States also argues that even if Defendant has standing to challenge the search, it falls within a recognized exception to the warrant requirement. [Doc. 64, pp. 8-14].

II. FINDINGS OF FACT

On February 11, 2014, Defendant was granted parole by the Tennessee Board of Parole. [Ex. 2]. The conditions of Defendant's release were contained in a Parole Certificate and required, among other things, that Defendant obey local, state and federal laws; refrain from possessing or carrying a firearm; and agree to warrantless searches by law enforcement and probation/parole officers of his person, vehicle, property, and place of residence at any time. *Id.* The conditions also specifically state that officers are not required to have reasonable suspicion in order to search Defendant's person or property. *Id.* Defendant signed the Parole Certificate and by doing so acknowledged that he fully understood his terms of release. *Id.* Additionally, Jessica "Niki" Melton, a secretary with the State of Tennessee Office of Probation and Parole at Cleveland, testified that Defendant's parole file included a notation that these terms were reviewed with Defendant by someone in their office, although she could not state who conducted the review.

On May 11, 2018, Defendant was allegedly involved in a hit and run crash in Greene County, Tennessee. [Doc. 64, p. 2]. Law enforcement officers were provided information regarding the vehicle that fled the scene and determined that it was owned by Defendant. Officers were initially unable to locate Defendant for questioning. [Doc. 64, pp. 2-3]. On May 21, 2018, the Greene County Sheriff's Department received a tip about Defendant's whereabouts. [Doc. 64, pp. 3-4]. According to the testimony of Patrol Officer Aaron Spears, a fourteen year veteran of the Greene County Sheriff's Department, Defendant planned to meet a friend at the clearing near a wooded area adjacent to Sunrise Church Road in Bulls Gap, Tennessee, which is close to Interstate 40 Exit 23. Officer Spears further stated that the friend was supposed to drive his truck to the site and rev the engine when he arrived as a signal to Defendant that he was there to pick him up. Officer Spears also noted that once officers received the tip, the Greene County Sheriff's Department worked with Hawkins County law enforcement officers to plan Defendant's apprehension based upon the active warrants Defendant had in Greene County. Ultimately, according to Officer Spears, several law enforcement agencies took part in Defendant's apprehension.

Defendant's friend agreed to cooperate with law enforcement and took officers with him as he travelled to the spot where he had agreed to meet Defendant. [Doc. 64, p. 4]. Officer Spears testified that one officer rode in the cab of the truck with Defendant's friend while he and another officer, Nick Milligan, lay flat in the bed of the truck waiting for Defendant to arrive at the agreed meeting location. After his friend revved the truck engine, Defendant emerged from the wooded area adjacent to Sunrise Church Road. Officer Spears stated that as Defendant ran toward his friend's truck, law enforcement officers emerged from the truck and Drug Task Force Officer Scott Stewart subdued Defendant. Officer Spears further noted that as a result of Defendant's behavior Officer Stewart was forced to take him to the ground and handcuff him, after which he immediately

secured Defendant in a patrol car.

After Defendant's arrest, Sheriff (then-Officer) Wesley Holt testified that he conducted a search of the northern perimeter of the wooded area where Defendant was arrested and within ten to fifteen minutes discovered a piece of luggage which was in a grassy area close to the tree line but away from the area where Defendant was arrested. The luggage contained personal items including clothing, toiletries, two cell phones, and a box of CCI, .22 caliber ammunition. [Ex. 9]. The discovery of the ammunition in the suitcase led to an additional charge against Defendant and the cell phones provided evidence incriminating of Defendant. [Doc. 64, p. 4]. Sheriff Holt explained that since the luggage was discovered subsequent to arrest, it was logged on an inventory sheet. Sheriff Holt further testified that Defendant never expressly affirmed nor denied a possessory interest in the luggage found.

In addition to the witnesses it called, the Government offered into evidence a Property Record Card from the Greene County Property Assessor's Office. [Ex. 1]. This official government record reflected that Defendant was not the record owner of the property where the suitcase was located, and that the owner of the property had owned it since 2012. *Id.*

## II.  ANALYSIS

### a. Defendant lacks a reasonable expectation of privacy in the suitcase.

The Court must initially determine whether Defendant may assert his Fourth Amendment privacy rights to suppress evidence procured during a warrantless search of luggage located on land that he did not own when the luggage was located outside and was not in his possession or within his immediate control. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. These protections extend to those places a person "seeks to preserve as private, even in an area accessible to the public." *Katz v. United States*, 389 U.S. 347, 351 (1967).

However, "[a]n expectation of privacy does not give rise to Fourth Amendment protection…unless society is prepared to accept that expectation as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39-40 (1988). It is the responsibility of the defendant to assert his or her privacy interest. *See United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1 (1978)). Here, Defendant bears the burden of proving that the luggage located on the Sunrise Church Road property was being preserved as private.

For Defendant to make this showing, he must first prove "(1) that he had a subjective expectation of privacy, and (2) that his expectation was objectively reasonable." *United States v. Washington*, 573 F.3d 279, 282 (6th Cir. 2009). The second prong will only be satisfied if the expectation of privacy asserted is one that "society is prepared to recognize as legitimate." *Id.* (citing *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000)). Here, the property in question is a suitcase located in a grassy area at the tree line on the property where Defendant was arrested but not in the area where the arrest occurred. Additionally, Defendant was on parole at the time of his arrest and was subject to warrantless searches of his person and property, even where law enforcement did not have reasonable suspicion to search.

Turning first to the question of whether Defendant had an objectively reasonable expectation of privacy in this instance, the nature of the personal property Defendant seeks to suppress helps guide the Court's analysis. The Sixth Circuit has explained that owners of luggage are typically afforded "a strong expectation of privacy" in those items. *United States v. Oswald*, 783 F.2d 663, 666 (6th Cir. 1986). At the same time, that expectation of privacy is not absolute, and Defendant cannot assert a privacy interest simply because the courts typically afford privacy rights in this category of personal property. *See id.* at 666-67. The *Oswald* court makes it clear that the location of the luggage will also influence whether an expectation of privacy is objectively reasonable. *Id.* For instance, the Sixth Circuit has previously held that there was a reasonable

expectation of privacy in luggage located in an airport baggage claim area but that there was not likely that same reasonable expectation if luggage was left in a burned-out car along a roadway. *Id.* This point is further illustrated by *United States v. Wilson* where a defendant's privacy right in his suitcase was not violated when the suitcase, left hidden in a wooded area near his campsite and adjacent to a public cemetery, was discovered and searched. 984 F. Supp. 2d 676, 681-83 (E.D. Ky. 2013).

The location of luggage in the instant case is easily distinguished from *Oswald*. The owner of the baggage in *Oswald* was an airline customer who had paid to have his luggage transported to his final destination with the understanding that he would be able to retrieve that baggage from the baggage claim area immediately following his flight. This temporary placement of luggage in a public place and outside of the owner's control is not enough to strip Fourth Amendment protections. *Id.* Defendant, unlike an airport patron, was neither an owner nor a guest on the property where his luggage was found. Instead, he was a trespasser. Where a party is a trespasser to land, he or she may not rely on the same rights as an owner or even a guest. *See United States v. Hunyady*, 409 F.3d 297, 302-03 (6th Cir. 2005) (finding a person trespasser lacked a legitimate expectation of privacy as to that property); *see also McRae* 156 F.3d at 711 (holding a defendant living in an abandoned house for one week could not assert an expectation of privacy where defendant neither owned nor rented the property); *Wilson*, 984 F. Supp. 2d at 681-83 (finding a suitcase stored without permission in the wooded area adjacent to a cemetery was not the sort of property in which society would expect privacy).

Under Tennessee law, "a person commits criminal trespass if the person enters or remains on property . . . without the consent of the owner." Tenn. Code Ann. § 39-14-405. Here, the Defendant did not own the land where he was apprehended and where his suitcase was located. [Ex. 1]. While Defendant argues that the burden was on the United States to prove Defendant did

not have the right to be on the premises at issue, the Court finds that once the Government demonstrated that Defendant was not a record owner of the property, the burden shifted to Defendant to demonstrate that he had been on the premises lawfully. Defendant presented no evidence at the hearing on his suppression motion to suggest he was present on the property with the owner's consent. Lacking consent from the recorded owner, Defendant's use of the property at issue satisfies the elements of trespass in Tennessee. *See* Tenn. Code Ann. § 39-14-405. Under *McRae* and *Hunyady*, individuals without consent to occupy or otherwise use land lack an expectation of privacy as to that land.

Nevertheless, Defendant argues that his trespass is not dispositive as to the question of his expectation of privacy. In support of his position, Defendant directs the Court to a pair of cases involving temporary campsites where courts determined that an expectation of privacy would not be lost due to trespass alone. *United States v. Sandoval*, 200 F. 3d 659, 660 (9th Cir. 2000) found suppression was appropriate where the container searched was kept in an enclosed tent, while *State v. Mooney*, 588 A. 2d 149, 161 (Conn. 1991) found suppression appropriate where duffel bag and cardboard box searched were located under an overpass that a homeless man regarded as his home. The Court notes that the campsites in both of those cases were in places quintessentially public in nature—land owned by the Bureau of Land Management in *Sandoval* and the area beneath a highway overpass in *Mooney*. 200 F.3d at 660; 588 A. 2d. at 149. By contrast, the location of the suitcase in the instant action was not publicly owned nor of a character indicating the public was invited to use the property. Additionally, in both of the cases relied upon by Defendant the owners of the bags at issue kept them in a place that demonstrated some intent to keep the bags private from others.

In the case at hand, Defendant's bag was found out in the open in a grassy area near the tree line but not in the vicinity of Defendant's arrest. The bag was not found in a campsite nor with any other items which might indicate that the suitcase was part of an area he was using as a home.

### b. Defendant's terms of parole allowed law enforcement officers to conduct a warrantless search of the suitcase.

Even if Defendant, while a trespasser, could be said to have a reasonable expectation of privacy in this luggage, the Court must consider that Defendant was on parole and subject to warrantless searches of his person and property by law enforcement officers at any time. [Ex. 3]. While Defendant argues that the officers who searched his luggage were unaware of Defendant's status as a parolee, in determining whether to suppress evidence yielded from a warrantless search, the focus is on a defendant's reasonable expectation and not the officer's knowledge.

"[T]he nature of the relationship between state actors and individuals subject to state supervision in lieu of or following release from prison alters the relevant analysis under the Fourth Amendment." *United States v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007). Searches of parolees are reviewed under a totality of the circumstances test, with express parole conditions being one "salient element." *Unites States v. Knights*, 534 U.S. 112, 118 (2001). The Supreme Court has further explained that where a parolee agrees to a "clear and unambiguous search condition" that parolee may be required to submit to a warrantless and suspicion-less search. *Samson v. California*, 547 U.S. 843, 852,57 (2006). Relying on *Knights* and *Samson*, the Tennessee Supreme Court has explained that language in the standard Tennessee Parole Certificate serves to "alert parolees that law enforcement officers will be able to search them and their premises without the usual necessity of first obtaining a judge's or magistrate's permission." *State v. Turner*, 298 S.W. 3d 155, 167 n.12 (Tenn. 2009). The only limitation to searches permitted under the Tennessee Parole Certificate will be those deemed "arbitrary, capricious, or harassing." *United States v. Widener*,

No. 3:08—CR—01, 2008 U.S. Dist. LEXIS 90072, 2008 WL 4831344, at *6-7. (E.D. Tenn. Nov. 4, 2008).

Here, given Defendant's written acknowledgement[1] that he was subject to warrantless searches of his person and property at any time, even in absence of reasonable suspicion, it would be impossible for Defendant to have formed an objectively reasonable expectation of privacy in the luggage at issue. The Tennessee Parole Certificate alerted Defendant that his possessions and person could be searched at any time, with or without cause. Moreover, nothing in the record supports a conclusion that the search of the suitcase was arbitrary, capricious or harassing.

## IV.  CONCLUSION

Defendant's luggage was not under Defendant's control or in his possession when it was found, and he did not leave it in a place where one would typically expect to leave personal possessions for safekeeping. Instead, he left the luggage at the periphery of a wooded lot he did not own, where it was surrounded by overgrown vegetation. [Ex. 6, 7]. Defendant was also a parolee at the time the luggage was discovered and was subject to warrantless searches of his person and property by law enforcement officers, even in absence of reasonable suspicion. In light of the above, the Court finds that either Defendant's status as a trespasser who had left his luggage unattended in the open air or his status as a parolee subject to warrantless searches, standing alone, would be sufficient to prevent Defendant from forming an objectively reasonable expectation of privacy in the luggage at issue. Moreover, the fact that Defendant was a trespasser deprives him of the standing to raise the issue at all. Had Defendant stored the suitcase at a friend's home, left it in an airport, or even obtained permission from the record owner of the wooded lot to be present

---

[1] The Sixth Circuit looks at the totality of the circumstances in assessing a person's consent to the terms of parole. *See United States v. Smith*, 526 F.3d 306, 310-11 (6th Cir. 2008) (explaining that the nature in which parole terms are relayed does not in and of itself diminish a defendant's consent thereto; rather courts look at a the totality of the circumstances in reviewing a defendant's consent to parole terms.) Here, Defendant's signature on his parole certificate and Jessica "Niki" Melton's testimony that Defendant received a verbal explanation of his parole terms indicate his consent to be governed by the parole agreement.

on the property, the Court's analysis might be different. Under the facts at issue, the Court concludes that Defendant does not have standing to raise Fourth Amendment privacy concerns regarding the search of his luggage, but even if he did, his claims would fail because he had no objectively reasonable expectation of privacy in it. For these reasons, the undersigned **RECOMMENDS** that Defendant Smith's Motion to Suppress [Doc. 62] be **DENIED.**[2]

Respectfully Submitted,

s/Cynthia Richardson Wyrick
United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).